IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

AMELIA FAYE MOORE                                                  PLAINTIFF

V.                                                  CIVIL ACTION NO.: 1:16-CV-150-RP

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security                         DEFENDANT

**MEMORANDUM OPINION**

      Plaintiff Amelia Faye Moore has applied for judicial review under 42 U.S.C. § 405(g) of the Commissioner of Social Security's decision denying her application for disability insurance benefits (DIB) under Title III of the Social Security Act, 42 U.S.C. §§ 416(i), 423. Docket 1. Plaintiff filed an application for benefits on January 31, 2011, alleging disability beginning on May 11, 2007. Docket 7 at 99-102.

      The agency administratively denied Plaintiff's claim initially on June 9, 2011 and on reconsideration on August 18, 2011. Docket 7 at 53-56. Plaintiff requested an administrative hearing, which Administrative Law Judge (ALJ) Rebecca B. Sartor held on November 29, 2012. *Id*. at 66-67; 76-81. The ALJ issued an unfavorable decision on December 10, 2012. *Id*. at 9-23. The Appeals Counsel denied Plaintiff's request for review on March 12, 2013. *Id*. at 1-4. Plaintiff timely filed an appeal from the March 12, 2013 decision and on June 4, 2015, this Court entered a Final Judgment reversing and remanding the ALJ's decision with the specific instruction that the ALJ "clarify the residual functional capacity assessment." *Id*. at 390-391 (*Moore v. Colvin*, 1:14-cv-87-DAS (N.D. Miss. Final Judgment dated June 4, 2015)).

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security. Under Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted for Acting Commissioner Carolyn W. Colvin as the defendant in this suit. No further action needs to be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. §405(g).

On remand, the ALJ held a second hearing on December 10, 2015. *Id*. at 434-38; Docket 19 at 533-66. The ALJ issued a second unfavorable decision on June 3, 2016, from which Plaintiff appealed to this Court. Docket 7 at 294-309. The undersigned held a hearing on March 22, 2017, and the matter is now ripe for review.

Because both parties have consented to a magistrate judge conducting all the proceedings in this case as provided in 28 U.S.C. § 636(c), the undersigned has the authority to issue this opinion and the accompanying Final Judgment. Docket 13.

## I. FACTS

Plaintiff was born on April 6, 1965, and was 47 at the time of the first ALJ hearing on November 29, 2012. Docket 7 at 101, 33. Plaintiff graduated high school and attended three years of college but did not obtain a degree. *Id*. at 33-34. Plaintiff contends she became disabled as a result of anxiety attacks, mental conditions, depression, and a nervous breakdown in 2007. *Id*. at 115. At the first ALJ hearing, Plaintiff stated that she began having anxiety and panic attacks in 2007 leading up to and around the time she left her job in March 2007 because of the alleged severity of her various mental conditions. *Id*. at 34-36. She testified that, despite taking medication, she experiences anxiety attacks whenever she leaves home and is never able to go anywhere by herself. *Id*. at 37-38. Plaintiff stated that she experiences anxiety or panic attacks on at least half of the days of the month, which results in depressive episodes. *Id*. at 38-39. Plaintiff's children are homeschooled, and she occasionally assists with their computer-based curriculum and meal preparation. *Id*. 40-43. Out of a seven-day week, Plaintiff testified that she may be able to fully function for eight hours in her home "probably two to three days." *Id*. at 45.

On December 10, 2012, the ALJ determined that Plaintiff experienced the severe impairments of anxiety and depression but that Plaintiff's impairments did not meet or medically

equal a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1. (404.1520(d), 404.1525, and 404.1526). *Id*. at 14. Considering Plaintiff's severe impairments of anxiety and depression, the ALJ found that Plaintiff's demonstrated abilities were consistent with a Residual Functional Capacity (RFC) to perform a full range of work at all exertional levels, including routine repetitive tasks, but with the following nonexertional limitations: no interaction with the public and only occasional interaction with co-workers; no production pace work. *Id*. at 14, 17. The ALJ formulated this conclusion based on the State agency psychological consultant's assessment, hearing testimony, and the cumulative record evidence. *Id*. Ultimately the ALJ found Plaintiff to be not disabled. *Id*. at 23.

Plaintiff appealed the ALJ's decision and this Court found that "the ALJ's decision, specifically the finding of the plaintiff's residual functional capacity is not supported by substantial evidence." *Id*. at 390. The Court elaborated that the consulting examiner found that Plaintiff's capacity for concentration, persistence, and pace were poor; however, the state disability examiner found that Plaintiff could maintain her concentration for two-hour blocks during an eight-hour day. *Id*. In light of the consultative examiner's findings as well as "voluminous evidence from treating sources" as to Plaintiff's poor ability to maintain concentration, persistence, and pace, the Court found that "the contrary opinion of a non-examining disability determination doctor is to insufficient to support the decision." *Id*. The Court sought greater specificity regarding Plaintiff's ability to perform "routine repetitive tasks, but no production pace work" and remanded the case to the ALJ "to clarify the residual functional capacity assessment." *Id*. at 390-91.

On December 10, 2015, the ALJ held a second hearing at which time Plaintiff was 50 years of age. Docket 19 at 540. Because Plaintiff had recently suffered from a stroke, her

husband testified on her behalf that around the date of the ALJ's first decision, December 2012, Plaintiff was unable to provide any significant contribution to daily household activities like cooking and cleaning and was unable to be active and work eight hours a day at any task. *Id*. at 542-43. Plaintiff's husband testified that she exhibited paranoid behaviors on outings to the grocery store and that he could not recall his wife's ability to sustain her concentration and attention on anything for two hours at a time. *Id*. at 546, 551.

In her decision dated June 3, 2016, the ALJ determined that Plaintiff had the RFC to perform work at all exertional levels and retained the ability to perform routine, repetitive tasks; she was capable of occasional interaction with co-workers and supervisors but not the public; and she could not perform work at a production rate pace. Docket 7 at 301. The vocational expert testified that an individual with Plaintiff's age, education, work experience, and RFC would be able to perform the jobs of an office helper, a checker I, and a sampler. *Id*. at 308-309; Docket 19 at 559. Notably, the vocational expert stated that one's inability "to sustain attention and concentration for two hours at a time […] would rule out virtually all jobs at all levels." Docket 19 at 560. The ALJ ultimately ruled that Plaintiff had not been under a disability, as defined in the Social Security Act, at any time from May 11, 2007, through December 31, 2012. *Id*. at 308-309.

Plaintiff asserts that the ALJ failed to comply with the Final Judgment entered on June 4, 2015 reversing and remanding the ALJ's decision with the specific instruction to "clarify the residual functional capacity assessment." Docket 10. Plaintiff also claimed that the ALJ's finding at Step 3 was contrary to the opinions of the treating and consulting sources; however, at the

hearing, counsel for Plaintiff conceded this argument and proceeded only with the argument regarding the ALJ's failure to "clarify the residual functional capacity assessment."[2] Docket 10.

## II. EVALUATION PROCESS

In determining disability, the Commissioner, through the ALJ, works through a five-step sequential evaluation process.[3] The burden rests upon the plaintiff throughout the first four steps of this five-step process to prove disability, and if the plaintiff is successful in sustaining her burden at each of the first four levels, then the burden shifts to the Commissioner at step five.[4] First, the plaintiff must prove she is not currently engaged in substantial gainful activity.[5] Second, the plaintiff must prove her impairment is "severe" in that it "significantly limits [her] physical or mental ability to do basic work activities . . . ."[6] At step three the ALJ must conclude that plaintiff is disabled if she proves that her impairments meet or are medically equivalent to one of the impairments listed at 20 C.F.R. Part 404, Subpart P, App. 1, §§ 1.00-114.09 (2010).[7] If the plaintiff does not meet this burden, at step four she must prove that she is incapable of meeting the physical and mental demands of her past relevant work.[8] At step five, the burden shifts to the Commissioner to prove, considering the plaintiff's residual functional capacity, age, education and past work experience, that she is capable of performing other work.[9] If the

---

[2] Plaintiff's brief also asserts that the December 10, 2015 remand hearing transcript is incomplete. Docket 10. However, this argument became moot when the undersigned granted the Commissioner's Motion to Supplement the administrative record in order to complete the December 10, 2015 hearing transcript. Docket 18.
[3] *See* 20 C.F.R. §§ 404.1520 (2012).
[4] *Crowley v. Apfel,* 197 F.3d 194, 198 (5th Cir. 1999).
[5] 20 C.F.R. §§ 404.1520(b) (2012).
[6] 20 C.F.R. §§ 404.1520(c) (2012).
[7] 20 C.F.R. §§ 404.1520(d) (2012). If a claimant's impairment meets certain criteria, that claimant's impairments are "severe enough to prevent a person from doing any gainful activity." 20 C.F.R. § 416.925 (2011).
[8] 20 C.F.R. §§ 404.1520(e) (2012).
[9] 20 C.F.R §§ 404.1520(g)(2010).

Commissioner proves other work exists which the plaintiff can perform, plaintiff is given the chance to prove that she cannot, in fact, perform that work.[10]

### III.  STANDARD OF REVIEW

Judicial review of the Commissioner's final decision to deny benefits is limited to determining whether the decision is supported by substantial evidence and whether the Commissioner applied the correct legal standard. *Crowley v. Apfel,* 197 F.3d 194, 196 (5th Cir. 1999), citing *Austin v. Shalala*, 994 F.2d 1170 (5th Cir. 1993); *Villa v. Sullivan,* 895 F.2d 1019, 1021 (5th Cir. 1990). The court has the responsibility to scrutinize the entire record to determine whether the ALJ's decision was supported by substantial evidence and whether the proper legal standards were applied in reviewing the claim. *Ransom v. Heckler*, 715 F.2d 989, 992 (5th Cir. 1983). A court has limited power of review and may not reweigh the evidence or substitute its judgment for that of the Commissioner,[11] even if it finds that the evidence leans against the Commissioner's decision.[12]

The Fifth Circuit has held that substantial evidence is "more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Crowley v. Apfel*, 197 F.3d 194, 197 (5th Cir. 1999) (citation omitted). Conflicts in the evidence are for the Commissioner to decide, and if there is substantial evidence to support the decision, it must be affirmed even if there is evidence on the other side. *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990). The court's inquiry is whether the record, as a whole, provides sufficient evidence that would allow a reasonable mind to accept the conclusions of the ALJ. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "If supported by substantial evidence, the

---

[10] *Muse*, 925 F.2d at 789.
[11] *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988).
[12] *Bowling v. Shalala*, 36 F.3d 431, 434 (5th Cir. 1994); *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988).

decision of the [Commissioner] is conclusive and must be affirmed." *Paul v. Shalala,* 29 F.3d 208, 210 (5th Cir. 1994), citing *Richardson,* 402 U.S. at 390.

## IV. DISCUSSION

Plaintiff argues that the ALJ's failure to comply with the Court's Final Judgment reversing and remanding the ALJ's decision resulted in an erroneous assessment of Plaintiff's RFC that is (1) contrary to the medical opinions of the treating and consulting mental health specialists and (2) unsupported by substantial evidence. Docket 10 at 4-13. Specifically, Plaintiff asserts that the ALJ's RFC assessment is contrary to the medical opinions from Dr. Drumheller and Counselors Fye, Mitchell, and Kimbrough who all agree that Plaintiff experiences "severe limitations in concentration, persistence, or pace..." Docket 10 at 11. Plaintiff avers that the ALJ's RFC assessment fails to address her poor concentration, persistence, and pace with "sufficient specificity" as ordered by the Court in its June 4, 2015 Final Judgment. *Id*. at 12. Because the ALJ failed to comply with the Court's mandate, Plaintiff asserts that the decision is not supported by substantial evidence. *Id*. at 13.

The Commissioner counters that an ALJ has discretion in whether to adopt a medical source statement as well as "the sole responsibility for determining what weight should be given the proffered medical evidence." *Id*. at 8, 10; *see Proge v. Comm'r of Soc. Sec.*, 2014 WL 4639462, at *4 (N.D. Miss. Sept. 16, 2014) (citing *Johnson v. Bowen,* 864 F.2d 340, 347 (5th Cir.1988)). According to the Commissioner, the ALJ sufficiently addressed Dr. Drumheller's finding regarding Plaintiff's attention and concentration in formulating her RFC by limiting her to unskilled work and only occasional interaction with coworkers and supervisors. Docket 17 at 7. The Commissioner cites evidence from Dr. Lambert, the State agency non-examining psychologist, Dr. Sarkar Aleem at Community Counseling Services, and Plaintiff's August 2011

Function Report, to support her contention that substantial evidence supports the RFC assessment. Docket 17 at 5-11.

The Court will first address Plaintiff's argument that the ALJ failed to comply with the Court's June 4, 2015 remand order instructing the ALJ to "clarify the residual functional capacity assessment." Docket 7 at 390-91. Despite the Court's holding that the initial RFC "is not supported by substantial evidence" and "does not address the plaintiff's difficulties" in performing "routine, repetitive tasks, but no production pace work" with sufficient specificity, the ALJ's second RFC finding is essentially identical to her first. *Id*. at 17, 390.

Specifically, the Court held that the State agency psychological consultant's opinion was "too insubstantial to support the decision" as it was "contrary" to the "voluminous evidence from treating sources … who opined that the plaintiff's ability to maintain concentration, persistence and pace was poor or worse." *Id*. at 390-91. Still, the ALJ gave the State agency psychological consultant's mental assessment "some weight" on the basis that it "appears consistent with the record evidence as a whole." Docket 7 at 306. The Court's specific remand instructions were ignored, amounting to legal error and subjecting the matter to reversal on further judicial review. SSR 92-5C (S.S.A.), 1992 WL 311052 (citing *Hooper v. Heckler*, 752 F.2d. 83, 88 (C.A.4, 1985); *Mefford v. Gardner*, 383 F.2d 748, 758–759 (C.A.6, 1967)).

The ALJ's failure to comply with the Court's remand instructions resulted in an identical RFC which, again, is not supported by substantial evidence. The Commissioner's argument that the ALJ "properly assessed Plaintiff's RFC" based on the State agency psychological consultant's opinion that she "could maintain attention and concentration" fails in light of the Court's determination that the "contrary opinion of a non-examining disability determination doctor is too insubstantial to support the decision." Docket 17 at 8-9. Plaintiff argues that "all of

the treating and examining sources agree that [Plaintiff] had severe limitations in concentration, persistence, or pace" and without a contrary medical opinion from a treating or examining physician, the ALJ's decision is not supported by substantial evidence. Docket 10 at 11-12. The Court agrees.

Plaintiff was referred to Dr. Drumheller for a comprehensive mental status evaluation on May 10, 2011. Docket 7 at 215-20. Dr. Drumheller found that Plaintiff has the diagnoses of anxiety disorder with situationally-bound panic attacks and generalized anxiety as well as a mood disorder with major depressive and dysthymic features. *Id*. at 219. Dr. Drumheller stated that Plaintiff "could repeat only four digits forward and three backward" and concluded that her "concentration and attention are believed to be poor." *Id*. at 218-19.

Plaintiff was treated by three licensed mental health counselors, all of whom agree that she experienced significant limitations in concentration, persistence, and pace. Although not considered "acceptable medical sources," evidence from these "other sources," where based on special knowledge of the individual, may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function." SSR 06-03P (S.S.A.), 2006 WL 2329939.

The record contains treatment notes from licensed psychological counselor Leslie Fye from April 2008 through May 2009,[13] as well as a Medical Source Statement dated August 4, 2011. Docket 7 at 187-91; 243-48. According to Fye, Plaintiff experiences difficulty thinking or concentrating as a result of her major depression with severe psychotic features; and marked deficiencies of concentration, persistence or pace resulting in failure to complete tasks in a timely manner. *Id*. at 243-44. More specifically, Plaintiff's "paranoid delusions interfere with her

---

[13] The ALJ's decision states that Leslie Fye only treated Plaintiff from April 2008 through July 2008. Docket 7 at 302. However, the record contains treatment notes through May 2009, and a medical source statement dated August 4, 2011. Docket 7 at 187-91.

ability to concentrate for any duration" resulting in marked limitation in her ability to "maintain attention for a two hour segment." *Id*. at 247. Fye explained that Plaintiff's "persecutory and paranoid delusions impair her ability to negotiate working relationships and amplify her symptoms of depression and anxiety." *Id*. at 248. These conclusions are consistent with Fye's "claimant notes" detailing her counseling sessions with Plaintiff from April 2008 through March 2009. Docket 7 at 187-91.

Licensed psychological counselor Joyce Mitchell treated Plaintiff over a four-month period in 2011 and completed a Medical Source Statement on September 26, 2011. Mitchell indicated that in conjunction with Plaintiff's unspecified paranoid state and major depressive disorder, moderate to severe, Plaintiff experiences social withdrawal or isolation, recurrent panic attacks, persistent irrational fears, paranoia or inappropriate suspiciousness, generalized persistent anxiety, and difficulty thinking or concentrating. Docket 7 at 253-54. According to Mitchell, Plaintiff experienced moderate deficiencies of concentration, persistence, or pace and poor or no ability to maintain attention for a two hour segment. Docket 7 at 254, 257. During the August 8, 2011 session, Mitchell recorded the following about Plaintiff's thought processes: "scattered, paranoid, preoccupied, poor concentration, illogical." *Id*. at 265.

Finally, Plaintiff was treated at Community Counseling Services from October 2011 through September 2012. Dr. Aleem evaluated Plaintiff on her initial psychiatric intake and again during a follow-up visit. Docket 7 at 277-78. Plaintiff's monthly individual therapy sessions were conducted by Norma Kimbrough from February through September 2012. *Id*. at 279-82. In November 2012, Kimbrough completed a Medical Source Statement indicating that as a result of Plaintiff's panic disorder, mood disorder, and PTSD, Plaintiff had difficulty thinking or concentrating, experienced panic attacks 3-4 times a week, experienced marked deficiencies

of concentration, persistence, or pace, and because of her anxiety, experienced marked limitation in her ability to maintain attention and focus for a two hour segment. *Id*. at 285-89.

Contrary to the opinions of Dr. Drumheller, Leslie Fye, Joyce Mitchell, and Norma Kimbrough, State agency psychological consultant Dr. Horace Lukens concluded that Plaintiff was only moderately limited in her ability to maintain concentration, persistence, or pace, as well as in her ability to maintain attention and concentration for extended periods. *Id*. at 231, 235. Specifically, Dr. Lukens opined that Plaintiff could "maintain attention and concentration, and perform [repetitive, routine tasks] for two hour blocks during an eight hour day." *Id*. at 237.

The responsibility to determine the plaintiff's residual functional capacity belongs to the ALJ, *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir. 1995), but in making this determination the ALJ must consider all the evidence in the record, evaluate the medical opinions in light of other information contained in the record, and determine the plaintiff's ability despite any physical and mental limitations. *Martinez v. Chater*, 64 F.3d 172, 176 (5th Cir. 1995). The ALJ has considerable discretion in reviewing facts and evidence but, as a layman, she is not qualified to interpret raw medical data in functional terms. *Perez v. Secretary of Health and Human Services*, 958 F.2d 445, 446 (1st Cir. 1991) (citations omitted). An ALJ may not establish physical limitations or the lack of such limitations without medical proof to support that conclusion. *Patterson v. Astrue*, 2008 WL 5104746, *4 (N.D. Miss. 2008), citing *Nguyen v. Chater*, 172 F.3d 31, 35 (1st Cir. 1999). As established by the Fifth Circuit, "an ALJ may not rely on [her] own unsupported opinion as to the limitations presented by the applicant's medical conditions." *Ripley v. Chater*, 67 F.3d 552, 557-58 (5th Cir. 1995).

With respect to an ALJ's reliance on a non-examining physician's opinion, the Fifth Circuit has stated it "may be true" that as a matter of law, the reports of non-examining

physicians do not provide substantial evidence "when a non-examining physician makes specific medical conclusions that either contradict or are unsupported by findings made by an examining physician." *Villa v. Sullivan*, 895 F.2d 1019, 1023-24 (5th Cir. 1990) (citing *Lamb v. Bowen*, 847 F.2d 698, 703 (11th Cir. 1988); *Strickland v. Harris*, 615 F.2d 1103, 1109-10 (5th Cir. 1980)). "We believe an ALJ may properly rely on a non-examining physician's assessment when . . . those findings are based upon a careful evaluation of the medical evidence and do not contradict those of the examining physician." *Villa*, 895 F.2d at 1024.

It is clear that the findings of Dr. Lukens, who did not examine Plaintiff, contradict those of Dr. Drumheller, who did examine Plaintiff. According to the Fifth Circuit, those facts alone may render improper the ALJ's reliance on Dr. Lukens's assessment in order to support a finding of not disabled. *See Villa*, 895 F.2d at 1024 (the contrary opinion of a non-examining physician does not provide substantial evidence as a matter of law).

The ALJ's assessment of Plaintiff's credibility is flawed as well. In contrasting Plaintiff's claimed limitations with her ability to perform ordinary functions, the ALJ stated that Plaintiff's "condition did not interfere with her ability to care for and educate her teenaged sons," and "that she manages to complete her home tasks without interruptions from psychologically based symptoms." *Id*. at 306-07. However, Plaintiff testified that she had difficulties in each of those regards. She testified that her teenaged children "make their own breakfast or lunch" when she is having a bad day, and her husband testified that she was unable to cook and clean without her children's help. Docket 7 at 40; Docket 19 at 542. In fact, her husband testified that they purchased meals their children could heat up during the day in the microwave because Plaintiff "would forget she had food cooking," causing it to burn. Docket 19 at 550.

Regarding her children's school work, Plaintiff did not "educate her teenaged sons." Her husband testified that she did not do anything regarding her children's computerized homeschooling program other than encourage them to "[make] sure they did it." Docket 19 at 543. Plaintiff testified that she did not participate in any instruction related to her children's homeschooling, but would occasionally direct them to the program's explanation of how to solve particular programs they may have been having difficulty with. Docket 7 at 41-42.

The ALJ questioned the vocational expert as to whether jobs existed in the national economy for an individual with Plaintiff's RFC but who was unable to sustain attention and concentration for two hours at a time. Docket 19 at 560. The vocational expert opined that such a limitation "would rule out virtually all jobs at all levels." *Id*. The only record evidence supporting an ability to sustain attention and concentration for two hours at a time is Dr. Lukens's opinion, which not only was previously adjudicated "too insubstantial to support the decision," but also contradicts the "voluminous evidence from treating sources." Docket 7 at 390-91. In order to reach a finding of not disabled, the ALJ relied on the opinion of a non-examining State agency consultant that clearly contradicts the opinions of examining physician Dr. Drumheller, and counselors Leslie Fye, Joyce Mitchell, and Norma Kimbrough. The ALJ's decision is not supported by substantial evidence as the record does not support a hypothetical in which Plaintiff could sustain attention and concentration for two hours at a time.

## V.  DETERMINATION OF BENEFITS

In determining whether to reverse the Commissioner's final decision and remand or to grant benefits without further administrative review, the Court must look to the completeness of the record, the weight of the evidence in favor of the plaintiff, the harm to the claimant that further delay might cause, and the effect of a remand delaying the ultimate receipt of benefits by

a deserving plaintiff. SOCIAL SECURITY LAW & PRACTICE, §55.77, p. 129. In this case, the record supports the hypothetical that the vocational expert testified would not permit the performance of any jobs in the national economy. This diminishes – if not outright eliminates – the need for a remand for further consideration of the disability issue. Additionally, Plaintiff has been seeking benefits through the administrative processes for over six years.[1] The Court finds the evidence is conclusive that Plaintiff is disabled, that an award of benefits at this stage would be in the best interests of Plaintiff's health and welfare and will avoid further undue delay which would result upon remand for additional review. The Court directs that this case be remanded for the sole purpose of determining the amount of benefits to be awarded to the plaintiff under the Act.

## VI. CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision is not supported by substantial evidence, that a substantial number of jobs do not exist in Mississippi or the national economy that Plaintiff can perform due to her limitations, and that Plaintiff is entitled to benefits under the Social Security Act. This case is remanded for the sole purpose of determining the amount of benefits to be awarded. A final judgment in accordance with this memorandum opinion will issue this day.

SO ORDERED, this, the 28th day of April, 2017.

/s/ Roy Percy
UNITED STATES MAGISTRATE JUDGE

---

[1] Plaintiff protectively filed her applications for benefits on January 31, 2011.